UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| SUDBURY PUBLIC SCHOOLS,  \*  <br>  \*  <br>   Plaintiff,  \*  <br>  \*   Civil Action No. 10-cv-10988-DPW <br> v.  \*  <br>  \*  <br> MASSACHUSETTS DEPARTMENT OF  \*  <br> ELEMENTARY AND SECONDARY  \*  <br> EDUCATION, BUREAU OF SPECIAL  \*  <br> EDUCATION APPEALS, and STUDENT,  \*  <br> by and through his mother, SUSAN DOE,  \*  <br>  \*  <br>   Defendants.  \*  <br>  \*  | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF SUSAN DOE'S MOTION FOR AN ORDER ENFORCING STUDENT'S RIGHT TO "STAY-PUT" AT HIS CURRENT EDUCATIONAL PLACEMENT PENDING APPEAL**

Introduction

Defendant Susan Doe ("Doe" or "Parent") submits this memorandum of law in support of her motion for an interim order, based on the "stay put" provision of the IDEA, 20 U.S.C. § 1415(j), and federal and state special education regulations at 34 C.F.R. § 300.518(d) and 603 C.M.R. § 28.08(7). Sudbury is responsible for continuing to reimburse Parent for the Student's tuition and transportation at the Student's "current educational placement" pending the outcome of the school district's appeal.

Procedural Background

On July 24, 2009, Parent, *pro se*, filed a request for a due process hearing at the Massachusetts Bureau of Special Education Appeals ("BSEA") against the Sudbury

Public Schools.[1] Parent claimed that Sudbury had violated the IDEA by failing to offer an Individualized Education Program (IEP) for her son for the 2008-2009 school year (5th grade) and that the IEP that Sudbury was proposing for the 2009-2010 school year (6th grade), which the Parent rejected, did not provide her son with the free appropriate public education (FAPE) required by the IDEA.[2] Parents, who had unilaterally placed their son at the Carroll School, requested that the BSEA order Sudbury to reimburse them for the private school tuition for those two school years.[3]

At the beginning of the evidentiary hearing in February 2010, the Parent and the school district argued about whether the Hearing Officer would consider ordering a placement at Carroll for duration of the IEP term, which was the 2009-2010 school year, in addition to reimbursement of the expenses that the Parent would have paid up to the time of the BSEA decision.[4] *See* Administrative Record, vol. 4, at 1625-39. The Hearing Officer ruled that the Parent's request for a "prospective placement" for the remainder of

---

[1] Due process hearings at the BSEA are governed by the Individuals with Disabilities Education Act (IDEA), codified at 20 U.S.C. §§ 1400 *et seq.*; Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 and the Massachusetts special education law, codified at Chapter 71B of the Massachusetts General Laws.

[2] It was not disputed that Student has a disability that falls within the purview of the IDEA and the Massachusetts special education statute. *In re: Sudbury Public Schools*, 16 MSER 107, 113, BSEA #10-0704, slip op. at 12 (Apr. 9, 2010) (copy attached as Exhibit 1). Under the federal FAPE standard an educational program must be provided under an IEP that is tailored to the unique needs of the disabled child, and must meet all of the child's identified special education and related service requirements, including academic, physical, emotional and social needs. 34 C.F.R. 300.300(3)(ii); *Lenn v Portland School Committee*, 998 F.2d 1083, 1086 (1st Cir. 1993) and *Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 361 (1985).

[3] *See Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 371-72 (1985). The Hearing Officer reiterated what the Parent had to prove in order to get reimbursement for the private school: "Parent has the burden of persuasion that Sudbury's proposed IEPs for 6th grade were not appropriate, that Sudbury should have proposed an IEP for 5th grade, and that the private school in which Student has been enrolled (Carroll School) is appropriate." 16 MSER 107, 114, slip op. at 15; *see also Mr. I. v. Maine Sch. Admin. Dist. No. 55*, 480 F.3d 1, n. 22 (1st Cir. 2007).

2

the 2009-2010 school year was too late to be considered in that proceeding. *In re: Sudbury Public Schools*, 16 MSER 107, 108 n. 1, BSEA #10-0704, slip op. at 3 n. 1 (Apr. 9, 2010) (copy attached as Exhibit 1). "Therefore," he stated, "this Decision does not address any rights that Parents may have regarding Student's prospective placement at the Carroll School."[5] *Id.*

The Hearing Officer heard testimony for approximately two and one-half days in February and March 2010 and issued his Decision on April 9, 2010. The Hearing Officer found that Sudbury had denied Student a free appropriate education in the 5th grade (2008-2009) by failing to offer an IEP. 16 MSER at 117, slip op. at 21. However, the Hearing Officer made a discretionary decision to deny the Parent's request for reimbursement for the 5th grade at Carroll because he found that the Parent had not provided sufficient notice to Sudbury.[6] 16 MSER at 125, slip op. at 36. Sudbury did propose an IEP for the 6th grade, which the Hearing Officer found did not provide FAPE for the Student. 16 MSER at 120, slip op. at 28. He found the parents' rejection of the 6th grade IEP and their notice of the request for reimbursement for 6th grade at Carroll to have been timely and that the placement at Carroll was appropriate. 16 MSER at 123, 125, slip op. at 33, 36. The Hearing Officer therefore ordered Sudbury to:

---

[4] The *pro se* Parent also requested that the Hearing Officer order a placement at Carroll for the next three years, which was of course outside the scope of the hearing, since the Hearing Officer can only consider the IEP's that have been proposed.

[5] The hearing took place in February and March 2010, and the decision was issued in April. By that time the issue of "prospective placement" for the balance of the school year was no longer relevant, because by that time the Hearing Officer's order to reimburse the Parent up to the date of the Decision covered payments for the entire 2009-2010 school year. *In re: Sudbury Public Schools*, 16 MSER 107, 114, BSEA # 10-0704, slip op. at 10 (Apr. 9, 2010).

[6] The "Limitation on Reimbursement" section of the IDEA, 20 U.S.C. § 1412 (a) (10) (C) (iii) (I) allows a hearing officer to "reduce or deny" reimbursement to the parents if the parents did not provide sufficient advance notice of their intent to enroll their child in a private school at public expense, even if the parents prove that the school district did not provide FAPE.

> [R]reimburse Parent for all of her out-of-pocket expenses (including tuition and transportation) that she has incurred and paid, as of the date of this Decision, for her unilateral placement of Student at the Carroll School for 6th grade.

16 MSER at 125, slip op. at 36.

By letter dated June 14, 2010 and sent by e-mail, Parent sent documentation of her out-of-pocket expenses for 2009-2010 tuition and transportation to Sudbury's attorney.[7] Exhibit 2. On the same day, Sudbury filed its appeal of the BSEA Decision in this Court. By letter dated June 24, 2010, Sudbury responded to Parent's documentation for reimbursement as follows:

> [T]he District has filed an appeal in Federal Court. In these circumstances, the District is not obligated to comply with the monetary award granted by the hearing officer.

Exhibit 3.

On June 18, 2010, Sudbury proposed an IEP for Student for 7th grade (2010-2011). Exhibit 4. By letter sent by email on July 12, 2010, Parent rejected the IEP and placement and requested Sudbury to place Student at the Carroll School for the 2010-2011 school year. Exhibit 5.

On August 19, 2010, Parent, now represented by an attorney, filed a Motion for Compliance at the BSEA, requesting that Sudbury be ordered to comply with the Hearing Officer's order of April 9, 2010, to reimburse Parents for the 2009-2010 school year. Exhibit 6. Parent also requested that Sudbury be ordered to pay for Student, who was by then in the 7th grade, to continue to attend the Carroll pending the outcome of the appeal in federal court. On September 9, 2010, the Hearing Officer allowed the motion for

---

[7] Parent, who was proceeding *pro se* at the time, also requested reimbursement for monies paid to her expert witnesses and a retainer to an attorney. Once Parent was represented by an attorney, she no longer sought reimbursement for these additional expenses at the BSEA.

4

compliance with the order of reimbursement, ruling that "Sudbury shall immediately reimburse Parent for expenses due under the April 9, 2010 Decision." *In Re: Sudbury Public Schools,* BSEA # 10-0704, slip op. at 5 (ruling on compliance motion) (attached as Exhibit 7). The Hearing Officer ruled that the request for continued "stay put" funding at the Carroll School was outside the scope of a Motion for Compliance with the Order of April 9, 2010, and denied that portion of the motion without prejudice. *Id.* at 6.

## Issue Presented

This Motion addresses Sudbury's obligation to continue funding Student's placement at the Carroll School pending the appeal in federal court. The basis for this request is that the BSEA decision of April 9, 2010 made the Carroll School the student's "current educational placement" and gave Student the right to "stay put" at that placement by operation of federal and Massachusetts special education law. *See* 20 U.S.C. § 1415(j) and 603 CMR 28.08(7)(d).

## Standard for Enforcing Right to Placement Pending Appeal Under the IDEA

The IDEA provides that "during the pendency of any proceedings pursuant to [section 1415(e)(2), establishing the right to appeal the administrative decision], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child. . . ." 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(d); 603 C.M.R. § 28.08(7). Because the IDEA has this specific provision dealing with a student's placement pending the appeal of an administrative decision, once the "current educational placement" is determined by an administrative hearing, "the stay put provision requires no specific showing on the part of the moving party, and no balancing of the equities by the court." *Joshua A. v. Rocklin*

*Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009). The interim placement constructively operates as an injunction to preserve the status quo; it is not dependent on the merits of the appeal and is not subject to administrative exhaustion. *See Ashland Sch. Dist. v. V.M.*, 494 F. Supp. 2d 1180, 1182 (D. Or. 2007) ("Unlike the usual standards for awarding interim relief, the court does not even inquire whether the moving party is likely to prevail in this action. . . . Regardless of whether this court ultimately affirms the ALJ's decision or overturns it, during the pendency of this [judicial review], the School District must pay for [student's] placement"); *see also Cranston Sch. Dist. v. Q.D.*, No. 06-538ML, 2008 U.S. Dist. LEXIS 69846, at *42 (D.R.I. Sept. 8, 2008) (citing *Murphy v. Arlington Cent. Sch. Dist. Dep't of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (holding that the requirement that parents exhaust administrative remedies does not apply to the "stay-put" provision)).

## ARGUMENT

### PURSUANT TO THE "PLACEMENT PENDING APPEAL" PROVISION OF THE IDEA, 20 U.S.C. § 1415(j), SUDBURY MUST CONTINUE FUNDING THE PRIVATE SCHOOL PLACEMENT THAT THE BSEA FOUND TO BE APPROPRIATE.

A. When the BSEA Found That Sudbury's Proposed Placement for 2009-2010 did not Provide FAPE and that Parent's Unilateral Placement at the Carroll School Was Appropriate, The Carroll School Became the "Current Educational Placement" by Operation of Law.

When the administrative agency determines that the school district's IEP does not provide a free appropriate public education (FAPE) and that the private school where the parent unilaterally placed the student was appropriate, the Hearing Officer's decision and order for reimbursement of the private school tuition establishes the private school as the "current educational placement." *See Burlington v. Dep't of Educ. of Mass.*, 471 U.S.

6

359, 371-72 (1985). One year ago, the Fifth Circuit Court of Appeals described the *Burlington* holding as follows: "The Supreme Court held that an administrative decision in favor of parents who had placed their child in a private school after they rejected a proposed IEP constituted an agreement by the state to the change of the child's placement, making the new, private school placement the current educational placement of the child." *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 595 (5th Cir. 2009) (citing *Burlington*, 471 U.S. at 371-72), *cert. denied*, 130 S.Ct. 1892 (2010); *accord, Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78 (3d Cir.1996) (administrative approval of private school placement and order of reimbursement established private school as current educational placement pending appeal under the IDEA).

The Second Circuit Court of Appeals has noted that slight revisions in the federal regulations in 1999 confirmed that a hearing officer's decision in favor of the parents' placement establishes the "current educational placement" for purposes of 20 U.S.C. § 1415(j). *See Board of Educ. of the Pawling Central School District v. Schutz*, 290 F.3d 476, 482 (2d Cir. 2002). The regulation provided that:

> If the decision of a hearing officer in a due process hearing . . . in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency [in determining the current educational placement pending appeal].

34 C.F.R. § 300.514 (c) (1999).[8] The interpretive comment to the 1999 amendment to 34 C.F.R. § 300.514(c) states explicitly that the regulation "incorporates [the] interpretation" found in *Burlington, Susquenita,* and *Clovis v. Unified School District v .Office of*

---

[8] The regulation at 34 C.F.R. § 514 was rewritten in 2006 and nearly identical language is now codified at 34 C.F.R. § 300.518(d). *See* Assistance to States for the Education of Children with Disabilities, 71 Fed. Reg. 46540, 46797 (August 14, 2006) (codified at 34 C.F.R. § 300.518).

*Administrative Hearings*, 903 F.2d 635, 641 (9th Cir. 1990) that when a "state review official's decision is in agreement with parents that a change in placement is appropriate, that decision constitutes an agreement by the State agency and the parents for purposes of determining the child's current placement during subsequent appeals." 64 Fed. Reg. 12615 (March 12, 1999).

If Sudbury is contending that the BSEA decision did not establish the Carroll School as the "current educational placement" under the IDEA because the Decision only considered reimbursement and not "prospective placement," that argument has been rejected by every court that has considered the issue.[9] The Second Circuit has specifically rejected what is now Sudbury's attempt to distinguish an order of reimbursement from a change in placement:

> We therefore hold, in conformity with the understanding of *Burlington* manifested in the agency's 1999 amendments to the federal regulations and in tandem with the holdings in *Susquenita*, *Murphy*, and other cases, that an order of reimbursement predicated on a finding that a proposed IEP is inappropriate for a child constitutes a change in the child's current educational placement for purposes of interpreting the pendent placement provision, at § 1415(j), of the IDEA.

*Pawling Central School District*, 290 F.3d at 481. The Second Circuit noted that the school district can appeal the administrative decision ordering reimbursement to a state or federal court pursuant to 1415(i)(2)(A), as Sudbury has done here, but that "during the pendency of

---

[9] Stay-put was denied after a reimbursement order in *L.M. v. Capistrano*, 556 F.3d 900, 912 (9th Cir. 2009). However, in that case the Hearing Officer found that the parents were not entitled to reimbursement for their unilateral placement. The district court reversed the administrative decision because the school district had committed a procedural violation, not because the unilateral placement was appropriate. In fact, in reversing the district court, the Ninth Circuit Court of Appeals specifically distinguished that situation from other cases where the hearing officer had found the parents' unilateral placement to be appropriate ("where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs *regardless of the outcome of an appeal*") (emphasis added). *Id.* The Court of Appeals pointed out that in a previous case the Court had "concluded the district was responsible for maintaining the

8

the due process proceedings, parents are entitled to have the child 'stay put' in his or her 'current educational placement.'" *Id.* at 481 (citing 20 U.S.C. § 1415(j)); *accord Cranston Sch. Dist.*, 2008 U.S. Dist. LEXIS 69846, at *42 ("[T]he case law supports Parents' position that, once the hearing officer has ordered reimbursement, the School must reimburse tuition until the appeals process has been completed").

The Third Circuit has also held that after the administrative agency has found the parents' unilateral placement at the private school to be appropriate and ordered reimbursement, § 1415(j) obligates the school district to fund the student's private school tuition on a continuing basis during the school district's appeal. *Susquenita*, 96 F.3d at 86-87 ("once reimbursement for the first year was found to be appropriate, payments for continuing the private school placement were proper while proceedings under the statute were pending").

The Fifth Circuit has noted that "*Burlington* and 34 C.F.R. § 300.518 transform a hearing officer's order adopting a private placement into an agreement that the private school is necessary to carry out the requirements of the IDEA. That placement is at 'no cost' to the parents of the child." *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d at 595; *see also Pawling Central Sch. Dist.*, 290 F.3d at 484 (noting that once parents' challenge succeeds, the school district's consent to the placement ordered is implied by law).

The school district in *Ashland Sch. Dist. v. V.M.*, 494 F. Supp. 2d at 1182 made the same argument that Sudbury is making here; namely, that "the ALJ's order [for reimbursement] was not a determination formally changing [the student's] 'current educational placement' for purpose of the stay-put provisions in 34 C.F.R. § 300.518."

---

student in that placement 'after the administrative decision that the placement was appropriate.'" *Id.* (citing *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearing*, 903 F.2d 635, 641 (9th Cir. 1990)).

494 F. Supp. 2d at 1182. The district court rejected this argument and held that the administrative decision ordering reimbursement for the prior year constituted a "change in placement," as meant in the IDEA, and established the student's "current educational placement" during the appeal to federal court. *Id.* The district court found that the ALJ's finding and order of reimbursement "constitutes the most recent finding by an ALJ or court regarding the proper placement for [student]," and established an agreement with the parents that a change of placement is appropriate, as specified in 34 C.F.R. §300.518(d). *Id.*

The BSEA has also reiterated the well-settled law. In *In re: Chicopee Public Schools and Nelida*, BSEA # 04-0093, 10 MSER 276 (May 26, 2004), the BSEA found "both that 2003-2004 IEP proposed by Chicopee did not provide FAPE to Nelida, and that the parents' unilateral placement at the [private] White Oak School did." *Id.* at 277 (copy attached as Exhibit 8). The school district reimbursed the parents for the private school tuition up to the date of the BSEA decision, but refused to recognize the disputed placement at the private school as the child's "current educational placement" during the pendency of the district's appeal to federal court. *Id.* at 276. The Hearing Officer noted that while the underlying decision did not specifically order the school district to assume programmatic, financial, and logistical responsibility for the student's private school placement, this responsibility shifted to the district as a matter of law on the date of the decision. *Id.* at 277. The Hearing Officer's Compliance Order stated as follows:

> Massachusetts and federal special education regulations leave no doubt that a Student's post-hearing "current placement" is the one found appropriate by an administrative due process officer when the parents agree. 603 C.M.R. 28:08(7) (d); 34 C.F.R. 300.514(c) [citing *Burlington* and *Sebastian K. v. Mass. Dept. of Educ.*, 2 MSER 248 (D.Mass.1996)]....
> While the Bureau's decision specifically ordered Chicopee to reimburse

10

> the parents for expenses incurred as a result of their daughter's unilateral placement, it did not, admittedly, specifically order Chicopee to assume programmatic, financial, and logistical responsibility for the Student's White Oak placement as of the date of the decision. <u>This happened by operation of law.</u> See e.g., *Burlington v. Dept. of Ed.*, 736 F.2d 773, 800 (1st Cir. 1984).

*Id.* at 277 (emphasis added).

In the case now before the Court, the Hearing Officer found on April 9, 2010 that the Carroll School "has been an appropriate placement for 5th and 6th grades for purposes of Parents' claim for reimbursement." 16 MSER at 123, slip op. at 33. Accordingly, the BSEA's decision in favor of Parent and the Carroll School placement constitutes the State's agreement to the Carroll School placement, making Carroll the student's placement pending appeal by operation of law.[10]

The policy behind this provision for continued placement pending appeal is clear. As the Third Circuit has noted, "[t]he purpose of [IDEA] . . . is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education." *Susquenita*, 96 F.3d at 86-87; *see also Houston Indep. Sch. Dist.*, 582 F.3d at 576. The Ninth Circuit stated a similar policy:

---

[10] The district court in *Ashland* noted that the hearing officer phrased the finding that the IEP was not appropriate in the past tense, finding that the unilateral private school placement "was" appropriate. The district court pointed out that "[t]hat phrasing is understandable, since the specific issue before the ALJ was a claim for reimbursement of the expenses already incurred." 494 F. Supp. 2d at 1182. The finding that the previous placement was appropriate still constituted the most recent determination by the state of the current appropriate educational placement.

Sudbury points out that the hearing officer denied (without prejudice) the Parent's request to order stay put placement, made as part of the Parent's Motion for Compliance, after Sudbury refused after the decision to comply even with the order of reimbursement for the prior year. *See* Opposition to Sudbury Public Schools' Motion to Stay the Decision and Order of the BSEA, filed herewith. The hearing officer did not deny that part of Parent's motion on the merits. He specifically stated that he would deny the motion in connection with the Motion for Compliance with the BSEA order, since prospective placement was not addressed in his April 19, 2010 order. It appears that the hearing officer felt that the stay put request should be done in a separate filing, which is presumably why he denied that part of the motion "without prejudice." In any case, as set forth above, the stay put provision of the IDEA becomes operational as a matter of law and is not subject to administrative exhaustion. *Cranston Sch. Dist.*, 2008 U.S. Dist. LEXIS 69846, at *42 (citing *Murphy*, 297 F.3d at 199).

11

> The fact that the stay put provision requires no specific showing on the part of the moving party, and no balancing of equities by the court, evidences Congress' sense that there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process.

*Rocklin Unified Sch. Dist.*, 559 F.3d at 1040.

In the case now before the Court, the state, through its Bureau of Special Education Appeals, determined that the Carroll School was the appropriate placement for the Student for school year 2009-2010. This is the last determination by the state of the appropriate placement for Student and that placement is required by law to be maintained by the school district unless and until the BSEA's determination is reversed on appeal. Clear statutory law under the IDEA and Massachusetts law as well as sound policy require that Sudbury provide for Student's continued placement at the Carroll School pending the outcome of the school district's appeal.

> B. Sudbury's New IEP for the 2010-2011 School Year, Proposed After the BSEA Decision and Rejected by Parents, Does Not Change the Student's Current Educational Placement at The Carroll School Unless and Until a Final BSEA or Court Decision Determines that Sudbury's Proposed IEP and Placement Provide FAPE for 2010-2011.

As discussed above, on April 9, 2010, when the Hearing Officer found that Sudbury's IEP for 2009-2010 was not appropriate and the parent's placement of the Student at the Carroll School for that year was appropriate and must be reimbursed, that made the Carroll School the Student's "current educational placement" by operation of law. Pursuant to 20 U.S.C. § 1415(j), Sudbury is required to maintain that placement for Student pending the final outcome of its appeal of the Hearing Officer's decision.

On June 18, 2010, Sudbury proposed a new IEP for the 2010-2011 school year, Exhibit 4, which the Parents rejected on July 12, 2010. Exhibit 5. Because the parents rejected the new proposed IEP, Sudbury remains responsible for Student's placement at Carroll. "[U]ntil a new placement is established by either an actual agreement between the parents and the District, or by an administrative decision upholding the District's proposed placement which [the parents] choose not to appeal, or by a court, the District remains financially responsible [for the private school placement]." *Murphy*, 297 F.3d at 366, quoted in *Pawling Central School District*, 290 F.3d at 484; *accord Houston Indep. Sch. Dist.*, 582 F.3d at 594, 595("A school district may be able to seek . . . to change the educational placement during the pendency of the litigation. . . . . Without such a change, the obligation for the proper public entity to pay for the private school exists.")

In *Pawling Central School District*, the school district argued that even though reimbursement had been ordered for a private school placement after a finding that the IEP did not provide FAPE, once the district proposed a new IEP for the following year, the rule requiring the district to continue funding the private placement pending its appeal was abrogated. 290 F.3d at 483. The Second Circuit rejected that argument. As the Second Circuit pointed out, "[s]uch an interpretation would undermine entirely the pending placement provision of the IDEA, allowing a school district to avoid altogether § 1415(j) by the mere proposal of a new IEP." *Id.*; *see also Murphy*, 86 F.Supp. 2d at 366 (to hold that a new IEP changes the "current educational placement" pending appeal "would mean that parents who could not afford a private placement would be forced to maintain their child in a public placement that an administrative decision held to be inappropriate"); *accord Ashland Sch. Dist.*, 494 F.Supp. at 1182 ("Finally, the District argues that its offer of a new

13

Individualized Education Program for V.M. somehow alters the 'current placement.' That is not the law."). In *Ashland*, the district court held that the IDEA required the school district during the pendency of the appeal to continue funding the placement for which the hearing officer had ordered reimbursement. 494 F. Supp. 2d at 1182. The court pointed out that the school district's position would negate the purpose of the IDEA's stay put provision: "The stay-put provisions strive to ensure the child is not treated as a ping-pong ball, ricocheting between placements with each new ruling in the dispute between parents and school. Unlike the usual standards for awarding interim relief, the court does not even inquire whether the moving party is likely to prevail in this action." *Id.*

## Conclusion

The fact that Sudbury has appealed the BSEA decision for 6th grade (2009-2010) does not relieve Sudbury of its responsibility to comply with the April 9, 2010 decision by reimbursing Parent for the 2009-2010 school year and by funding the Carroll School placement during the pendency of the appeal. If Sudbury seeks to change this placement, Sudbury must follow the appropriate due process procedures set forth in IDEA, M.G.L. c. 71B, and 603 C.M.R. 28.00.

The Supreme Court in *Burlington* pointed out that "Where, as in the present case, review of a contested IEP takes years to run its course—years critical to the child's development—important practical questions arise concerning interim placement of the child and financial responsibility for that placement." 471 U.S. at 361 *quoted in Susquenita*, 96 F.3d at 82. The purpose of the stay put provision in 20 U.S.C. § 1415(j) is "to protect handicapped children and their parents during the review process." *Susquenita*, 96 F.3d at 82. For the foregoing reasons, in order to protect the rights of Susan Doe and her son, this

Court should order the relief requested in Susan Doe's Motion for an Order Enforcing Student's Right to "Stay-Put" at His Current Educational Placement Pending Appeal.

        Respectfully submitted,

        STUDENT, BY HIS MOTER, SUSAN DOE,

        By her Attorneys,

        /s/ Joseph B. Green
        Joseph B. Green (BBO# 209040)
        Marie F. Mercier (BBO# 343150)
        Eileen M. Hagerty (BBO# 216490)
        Kotin, Crabtree & Strong, LLP
        One Bowdoin Square
        Boston, MA 02114
        (617) 227-7031

Dated: October 6, 2010

## **CERTIFICATION**

I hereby certify that a true copy of the foregoing was served upon the following attorneys of record through the District Court's Electronic Case Filing System on October 6, 2010:

Regina Williams Tate, Esq.
Murphy, Hesse, Toomey, and Lehane
300 Crown Colony Drive Suite 410
P.O. Box 9126
Quincy, MA 02269-9126

Tori T. Kim, Esq.
Massachusetts Attorney General's Office
One Ashburton Place
McCormack Building, 20th floor
Boston, MA 02108-1598

/S/ Joseph B. Green
Joseph B. Green, Esq.